OPINION OF THE COURT
Herman Cahn, J.
Plaintiff (Hohenberg), a Manhattan importer, complaining that merchandise which it bought from the defendant (Comitex), a Hong Kong manufacturer, was defective, brought suit against it for $33,000. Because Comitex is a foreign corporation, Hohenberg secured an ex parte order of attachment. Pursuant to the order, the Sheriff levied on a letter of credit in the amount of $5,500 established by a Hohenberg corporation in favor of Comitex at the National Bank of North America (NBNA). Hohenberg now moves pursuant to CPLR 6211 (subd [b]) to confirm the order of attachment. NBNA *233 opposes confirmation of the order and asks that it be vacated insofar as concerns the letter of credit.
A letter of credit is a unique chose in action. It is used principally in international transactions and is designed to assure a foreign shipper that his shipment will not be surrendered to the purchaser until payment has been made. A leading commentator has pointed out, "The financial value of the letter of credit promise is predicated upon its degree of legal certainty”. (Kozolchyk, Commercial Letters of Credit in the Americas, § 18.04[1], at pp 394-395.) The letter of credit is controlled not by the rules relating to commercial paper and bank checks but by article 5 of the Uniform Commercial Code, "Letters of Credit”, or, where applicable, the Uniform Customs and Practice for Commercial Documentary Credits of the International Chamber of Commerce (UCP). The letter of credit which NBNA issued is by its terms controlled by UCP and, therefore, under subdivision (4) of section 5-102 of the Uniform Commercial Code, the UCP alone controls.
The UCP provides:
"General Provisions and Definitions * * *
"c. Credits, by their nature, are separate transactions from the sales or other contracts on which they may be based and banks are in no way concerned with or bound by such contracts.”
"Form
"Article 1 * * *
"b. All credits, therefore, should clearly indicate whether they are revocable or irrevocable.”
Article 3
"a. An irrevocable credit constitutes a definite undertaking of the issuing bank, provided that the terms and conditions of the credit are complied with:
"i to pay, or that payment will be made, if the credit provides for payment, whether against a draft or not;
"ii to accept drafts if the credit provides for acceptance by the issuing bank or to be responsible for their acceptance and payment at maturity if the credit provides for the acceptance of drafts drawn on the applicant for the credit or any other drawee specified in the credit;
"iii to purchase/negotiate, without recourse to drawers and/ or bona fide holders, drafts drawn by the beneficiary, at sight or at a tenor, on the applicant for the credit or on any other *234 drawee specified in the credit, or to provide for purchase/ negotiation by another bank, if the credit provides for purchase/negotiation.”
Article 8
"a. In documentary credit operations all parties concerned deal in documents and not in goods.
"b. Payment, acceptance or negotiation against documents which appear on their face to be in accordance with the terms and conditions of a credit by a bank authorized to do so, binds the party giving the authorization to take up the documents and reimburse the bank which has effected the payment, acceptance or negotiation.”
Payment of a letter of credit may be enjoined only where active intentional fraud is shown. (American Bell Int. v Manufacturers Hanover Trust Co., 3157/79, Sup Ct, NY County, affd 70 AD2d 830.) Indeed, some courts have suggested that only fraud in the factum, rather than fraud in the inducement, would justify the refusal to pay a letter of credit. (Connell Rice & Sugar Co. v Citibank, 3631/79, NY County; Foreign Venture Ltd. Partnership v Chemical Bank, 59 AD2d 352.) Here, Hohenberg’s complaint alleges only breach of contract and breach of warranty.
There is another aspect to this matter. The letter of credit is not merely between Hohenberg and Comitex, but NBNA is itself a party to it, as is the Hong Kong Shanghai Banking Corp., the "Advising Bank”. In circumstances far more favorable to the movant, the Second Circuit said in KMW Int. v Chase Manhattan Bank (606 F2d 10, 17): "Both in the international business community and in Iran itself, Chase’s commercial honor is essentially at stake. Failure to perform on its irrevocable letter of credit would constitute a breach of trust and substantially injure its reputation and perhaps even American credibility in foreign communities. Moreover, it could subject Chase to litigation in connection with not only this matter but also other banking affairs in Iran.”
Hohenberg is not without a remedy. The amendment to CPLR 302 (L 1979, ch 252, eff Sept. 1, 1979), which gives New York jurisdiction over any nondomiciliary who "contracts anywhere to supply goods or services in the state”, allows it to bring suit in New York, and it has done so. It may have difficulty, if it is successful, in enforcing that judgment in Hong Kong, but that problem was inherent in the transaction from the beginning. See KMW Int. v Chase Manhattan Bank *235 (supra, p 15): "Furthermore, when KMW entered into its contract with the Water and Power Authority it assumed the business risks of international transactions. These risks included the possibility that even if a dispute about performance of the underlying contract should arise and international litigation ensue, which we assume can occur in this case, KMW’s funds would be paid out under the irrevocable letter of credit and held in foreign hands.”
Hohenberg’s motion to confirm the order of attachment is denied. NBNA’s cross motion to vacate the attachment of the letter of credit is granted.