OFFSHORE TRADING COMPANY, INC., Plaintiff,

v.

CITIZENS NATIONAL BANK OF FORT SCOTT, KANSAS, et al., Defendants.

Civ. A. No. 85–2115–0.

United States District Court, D. Kansas.

Jan. 7, 1987.

William W. Hutton, Gate & Hutton, Kansas City, Kan., for plaintiff.

David Mullies, Hudson, Mullies, Hudson & Hudson, Fort Scott, Kan., John C. Noonan, David E. Everson, Jr., Stinson, Mag & Fizzell, David W. Russell, Kansas City, Mo., Carl Cornwell, Kansas City, Kan., for defendants.

James C. Holway, pro se.

## MEMORANDUM AND ORDER

### EARL E. O'CONNOR, Chief Judge.

This action arose out of an Irrevocable Standby Letter of Credit No. 147 issued by the defendant, Citizens National Bank [hereinafter the Bank]. The credit was issued to the plaintiff on February 11, 1985, at the request of First Guaranty of South Jersey ["First Guaranty"]. The letter of credit was issued in compliance with a contract TWCC–001 between the defendant, Third World Capital Corporation ["Third World"], and the plaintiff; First Guaranty was surety to Third World's obligations under the contract. On or about February 14, 1985, the plaintiff declared that Third World was in default. Subsequently, the plaintiff delivered documentation to the Bank in order to draw on the letter of credit. However, the Bank refused to honor the plaintiff's draft against the letter of credit. This action was then filed against the Bank, Third World, First Guaranty and various officers and employees of these entities. The matter now comes before the court on cross-motions for partial summary judgment filed by the plaintiff, Offshore Trading Co., Inc. ["Offshore"], and the Bank.

The facts, briefly stated, are as follows. Offshore and Third World entered into negotiations for the sale of crude oil. On January 23, 1985, a Sales Purchase Agreement entitled Contract No. TWCC–001 went into effect where Third World agreed to sell three million barrels of Bonny Light crude oil to Offshore. Under the terms of Contract No. TWCC–001, Third World was required to submit a performance guarantee in the form of a standby letter of credit for $250,000 within five banking days of the effective date of the contract. On receipt of the standby letter of credit, Offshore agreed to open a letter of credit within five banking days at Third World's bank in an amount to cover the purchase price of the first oil shipment. The contract also provided that the first delivery was to be made within thirty days from the date of the contract and that Third World would provide specific shipping information to Offshore ten days prior to the lifting (loading) of the oil.

Also on January 23, 1985, Offshore entered into a contract to sell the identical quantity of oil to Tebtex Petroleum Company. The performance deadlines in this contract were identical to those in Contract No. TWCC–001.

After various delays, the Bank issued an irrevocable standby letter of credit No. 147 to Offshore on February 11, 1985. The credit was issued at the request of Third World's guarantor, First Guaranty. The letter of credit incorporated in its terms the provisions of the Uniform Customs and Practice for Documentary Credits (UCP), established by the International Chamber of Commerce. On the same date, Offshore executed an Assignment of Proceeds, assigning the credit to its buyer, Tebtex Petroleum.

On February 15, 1985, Leo King, president of Offshore, presented the Bank with various documents and a draft drawn against the credit. Offshore stated that Third World was in default for failing to notify it of the required shipping information pursuant to the terms of Contract TWCC–001. The Bank stated it would review the documents and contact Offshore the next banking day. On the next banking day, February 19, 1985, the Bank informed Offshore that it would not honor the draft. Offshore subsequently filed this action on February 21, 1985.

Plaintiff has filed a motion for partial summary judgment, claiming it is entitled to judgment as a matter of law on Count I of its amended complaint. Count I is essentially a breach of contract/wrongful dishonor claim against the Bank. The Bank responded to the plaintiff's motion and filed its own motion for summary judgment on Count I. The Bank's motion for summary judgment is not in compliance with Local Rule 15(c). However, due to the length of time that the motions have been pending, the court will rule on the motions at this time.

To rule favorably on a motion for summary judgment, the court must first determine that the matters on file regarding the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.*, 639 F.2d 671, 672 (10th Cir.1981). Pleadings and documentary evidence must be liberal-ly construed in favor of the party opposing the motion. *Thomas v. United States Dept. of Energy*, 719 F.2d 342, 344 (10th Cir.1983). A party resisting a motion for summary judgment, however, must set forth specific facts showing that there is a genuine issue for trial. *Dart Indus., Inc. v. Plunkett Co. of Oklahoma, Inc.*, 704 F.2d 496, 498 (10th Cir.1983). The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986). Summary judgment will not lie if the dispute about a material fact is genuine; in other words, the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Id.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d at 211–12.

The first issue that must be addressed is the Bank's argument that the plaintiff is not a real party in interest to the action. The Bank argues that the plaintiff completely assigned its interest in the letter of credit to Tebtex Petroleum. It is not disputed that on February 11, 1985, the president of Offshore Trading executed a so-called "Assignment of Proceeds" in favor of Tebtex Petroleum. This assignment read:

> We, Offshore Trading Company, Inc., (Offshore), hereby irrevocably assign Standby Credit # 147 issued on February 11, 1985 by The Citizens National Bank, Fort Scott, Kansas, (copy enclosed), by the order of First Guaranty of South Jersey, on behalf of Third World Capital Corporation, with Offshore as the beneficiary, to TEBTEX PETROLEUM, a division of Tebtex Inc.
>
> Should TEBTEX PETROLEUM demand Offshore to draw under the terms of this Standby Credit, TEBTEX PETROLEUM shall notify Offshore and Offshore will comply by drawing the proceeds of the Standby Credit and issue an irrevocable pay order, with TEBTEX PETROLEUM as the beneficiary, to your nominated bank.

Reading the first paragraph of the assignment tends to support the defendant's argument that a complete assignment was made. However, the title of the document —"Assignment of Proceeds"—and the second paragraph seem to indicate that less than a total assignment was made. In interpreting an agreement, the court must examine the contract as a whole. The court must take into account all the language in the instrument and construe it in harmony with other portions of the argument. *Seacat v. Mesa Petroleum Co.*, 561 F.Supp. 98, 105 (D.Kan.1983). The document, read as a whole, is still unclear, since the key language of the second paragraph remains ambiguous. These terms are not a clear reservation of the plaintiff's right to draw on proceeds. The final paragraph could be reasonably read as an agreement by the plaintiff to act as an agent for Tebtex in drawing on the letter of credit.

■ Genuine issues of fact remain as to the intent of Tebtex and Offshore regarding this assignment. If an assignment of *proceeds* was the intent of the parties, the plaintiff is a real party in interest. Under Article 5, the assignment of proceeds of a letter of credit is treated as an assignment of an account under Article 9. *See* K.S.A. 84–5–116(2). In this type of transaction, Offshore would have an enforceable interest in the letter of credit. This interest is absolute if Tebtex never obtained possession of the original letter of credit since the assignment of proceeds is ineffective until the assignee obtains possession of the document. *See* K.S.A. 84–5–116(2)(a). However, if the plaintiff merely agreed to act as Tebtex's agent to draw on the credit, Offshore's status as a real party in interest is questionable. The plaintiff has not shown any evidence that this "agency" extended to allow it to sue on the letter of credit in its own name. Therefore, genuine issues of fact remain as to the nature of the assignment to Tebtex. For these reasons, the Bank is not entitled to summary judgment on this issue.

The court will now turn to the issue of whether the Bank, as a matter of law, wrongfully dishonored the letter of credit.

The Bank argues that its dishonor was proper because (1) the letter of credit was void for the plaintiff's failure to establish its own letter of credit at Third World's Bank; (2) the documents presented with the sight draft were fraudulent; and (3) the documents presented did not comply with the terms of the letter of credit. The plaintiff disputes these arguments.

The first question is whether the letter of credit was void. The credit issued by the Bank contained a provision which read: "This Letter of Credit will become null and void, if no later than Five (5) Banking days from receipt of this Letter of Credit, [Offshore Trading] does not open initial Letter of Credit at [Third World's] bank per terms of Contract No. TWCC–001." It is undisputed that the plaintiff received a telex copy of the credit on February 11, 1985, and the original of the credit document of February 12, 1985. Under the terms of the letter of credit, the plaintiff had until February 19 or February 20, 1985, to establish its own letter of credit. It is also undisputed that Leo King, president of Offshore, appeared at the Bank on February 15, 1985, and attempted to draw on the letter of credit by presenting certain documents. When asked, King stated that Offshore did not intend to open its own letter of credit.

The Bank argues that the plaintiff's posting of its own letter of credit was a condition precedent to the Bank's obligation to honor the drafts drawn on the credit. The Bank relies on rules on conditions found in *Restatement (Second) of Contracts* §§ 224, 225. Section 224 provides: "A condition is an event, not certain to occur, which must occur ... before performance under a contract becomes due." However, by the very terms of the letter of credit, the plaintiff's obligation to post its own letter of credit was not a condition *precedent* to the validity of the letter of credit. Instead, it was a condition subsequent which terminated the Bank's duties under the credit. "[I]f under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance ... that duty is discharged if the event occurs." *Restatement (Second)*

*of Contracts* § 230. In this case, the Bank's duty to honor the letter of credit was to terminate on the occurrence of an event—the plaintiff's failure to post its own letter of credit within five banking days. Absent this failure by the plaintiff, the Bank's duties under the letter of credit continued.

■ Under the duties established by the Uniform Commercial Code and the Uniform Customs and Practice for Documentary Credits (UCP), the Bank's obligations to the plaintiff were activated by the plaintiff's presentment of the documents required by the terms of the credit. These documents were presented to the Bank on February 15, 1986. The Bank could take a reasonable time to examine the documents, UCP 16(c), and could *defer* honor until the close of the third business day. K.S.A. 84–5–112. However, the Bank's *duty* to honor arose on the day the beneficiary presented the draft and accompanying documents. Events after that time became irrelevant. Thus, on February 15, the letter of credit was in full force and effect. Regardless of the importance of Offshore's reciprocating letter of credit, the Bank assumed the risk that Third World would go into default during the five-day period before Offshore was obligated to provide its own letter of credit. For the foregoing reasons, the Bank, as a matter of law, could not properly dishonor Letter of Credit No. 147 because of Offshore's failure to establish its own letter of credit, since Offshore's time to do so had not yet expired.

■ The plaintiff argues that the Bank cannot claim any grounds for dishonor except for its failure to post its letter of credit. Plaintiff contends that the only ground stated by the Bank at the time of dishonor was Offshore's failure to establish its own letter of credit. Therefore, the plaintiff argues, the Bank is precluded by the UCP from relying on any other grounds. Since the UCC is silent on this "notice" question, the UCP controls the Bank's obligations. Section (d) of Article 16 provides that if "the issuing bank decides to refuse the documents, it must give notice to that effect without delay.... Such notice must state the discrepancies in

respect of which the issuing bank refuses the documents...." Furthermore, Article 16, section (e) precludes an issuing bank from claiming nonconforming documentation when it fails to comply with section (d). Clearly, the reasons for such rules is to give the beneficiary notice of the discrepancies in order to allow it to correct the documentation. Without notice of the discrepancies, the beneficiary may be unable to present conforming documents. As a result, if the Bank failed to give notice of any nonconformity other than failure to provide the reciprocal letter of credit, it is precluded from doing so now. However, the parties dispute what reasons for dishonor were given by the Bank on February 19. Therefore, the plaintiff is not entitled to summary judgment on this issue.

The Bank argues that it properly dishonored the letter of credit since it had evidence that the plaintiff's documents were fraudulent. It is the Bank's contention that before it issued its letter of credit, its president talked with officials of Third World, First Guaranty and Offshore. The Bank's president was allegedly told that *all* deadlines under Third World's contract with Offshore had been extended. As a result of these alleged extensions, the Bank believed that it was impossible for Third World to be in default on February 15. Furthermore, the Bank argues that when Offshore attempted to draw on the letter of credit, it contacted Third World who "reconfirmed" that the contract deadlines had been extended and that it was not in default. Therefore, the Bank contends that it had evidence that the plaintiff's document stating that Third World was in default was fraudulent.

The UCP is silent on the question of fraudulent documents. Therefore, the UCC provisions regarding fraud are applicable. *Rockwell Int'l Sys., Inc. v. Citibank, N.A.,* 719 F.2d 583, 588 (2d Cir.1983); *Cappaert Enter. v. Citizens & So. Int'l Bank,* 486 F.Supp. 819, 829 (E.D.La.1980). K.S.A. 84–5–114(2) states that an issuing bank *may* honor a draft on a letter of credit when the documents appear to comply, but a required document is forged or

fraudulent. The only time the issuer is *required* to honor the draft is when it is presented by someone with holder-in-due-course status. K.S.A. 84–5–114(2)(a). A customer alleging fraud or forgery can obtain an injunction to enjoin the bank from paying under a letter of credit to anyone except a holder in due course. K.S.A. 84–5–114(2)(b). If the customer does not obtain an injunction, an issuing bank "is still privileged to comply with its customer's plea of beneficiary fraud. [sic] and refuse to honor drafts drawn under the letter." B. Clark, *The Law of Bank Deposits, Collections and Credit Cards,* ¶ 8.8[1][a] (1986 Cumulative Supp. No. 2). However, the bank acts at its own peril when relying on its customer's assertions of fraud. *Id.*

In applying the fraud provisions of section 5–114, courts are split as to the degree of fraud necessary for an issuing bank to properly dishonor or for customers to enjoin payment under the letter of credit. Some courts have required that the fraud be egregious or patently obvious before dishonor is appropriate. *See, e.g., Bossier Bank & Trust Co. v. Union Planters Nat'l Bank,* 550 F.2d 1077 (6th Cir.1977); *Roman Ceramics Corp. v. Peoples Nat'l Bank,* 517 F.Supp. 526 (M.D.Pa.1981), *aff'd,* 714 F.2d 1207 (3d Cir.1983). The rationale for requiring egregious fraud is that when the fraud is of the nature as to vitiate the entire underlying contract, the legitimate purposes of the independence of the bank's obligation is no longer served. *Colorado Nat'l Bank v. Board of County Comm'rs,* 634 P.2d 32 (Colo.1981); *Stringer Constr. Co. v. American Ins. Co.,* 102 Ill.App.3d 919, 58 Ill.Dec. 59, 430 N.E.2d 1 (1981). Other courts have held that dishonor of a letter of credit is proper when mere intentional fraud is shown. *See, e.g., KMW Int'l v. Chase Manhattan Bank, N.A.,* 606 F.2d 10 (2d Cir.1979); *Hohenberg Co. v. Comitex Knitters, Ltd.,* 104 Misc.2d 232, 428 N.Y.S.2d 156 (1980).

■ There appear to be no Kansas cases on the issue of which standard is applicable under UCC Article 5 when dishonor is based on forged or fraudulent documents. After careful consideration of the issue, the court is of the opinion that if faced with the question, the Kansas Supreme Court would adopt the stricter egregious fraud standard. This is based on the strong policy that the letter of credit should be completely independent from the underlying contracts. As recognized in the comments following the fraud provisions, upholding the independence principle as much as possible is necessary to protect the commercial utility of letters of credit. K.S.A. 84–5–114, Kansas Comment, at 293–94 (1983).

The Bank states two bases for its claim that plaintiff's documents were fraudulent. First, the Bank claims that the obligations of Third World and Offshore were extended by agreement of the parties, and that the Bank was informed of the extension. As a result of this alleged extension, the Bank contends that the plaintiff's documents presented on February 15 were fraudulent when they stated that Third World was in default. The parties dispute whether there was an agreement extending all deadlines on the underlying contract between Offshore and Third World.

■ Assuming that there was an agreement to extend all deadlines in the oil contract, the issue is whether the Bank could rightfully dishonor payment under the terms of the letter of credit. The court is of the opinion that a document presented by a beneficiary seeking payment under a letter of credit because of a claimed default can be dishonored as fraudulent if there was *in fact* no default, and that no duty of the customer had even become due. Such a document is patently fraudulent and dishonor is therefore appropriate. In such a situation, the independence principle is not substantially affected by the dishonor. This situation is closely analogous to *Roman Ceramics Corp. v. Peoples Nat'l Bank,* 714 F.2d 1207 (3d Cir.1983). In *Roman Ceramics,* the defendant issued an irrevocable letter of credit to the plaintiff in order to guarantee payment for goods shipped by the plaintiff to the Bank's customer. Under the terms of the credit, the plaintiff/beneficiary was required to present an invoice with a certification that the invoice had not been paid. The benefi-

ciary presented such documents on October 19, 1979. Several days later, the bank's customer notified the bank that the invoices presented had been paid. Consequently, the defendant bank dishonored the presentment. The Third Circuit Court of Appeals held that the submission of the certified invoice by the beneficiary who knew, in fact, that the invoice had been paid relieved the issuing bank of its obligation to honor the draft. *Id.*

■ However, in this situation, the Bank may not shield itself from wrongful dishonor merely by relying on its customer's assertions of fraud. The Bank must establish that all the contract deadlines were *in fact* extended and that as a result Third World was not in default under any terms of the contract. Furthermore, the Bank must prove that Offshore knew that Third World was not in default at the time it presented its draft drawing on the letter of credit. The court is aware that the issuers of credits could be stuck between the proverbial rock and hard place when allegations of fraud arise. However, the UCC gives the issuer protection by allowing the issuer to honor the draft, even if there are allegations of fraud, as long as the issuer acts in good faith. K.S.A. 84–5–114(2)(b).

Facts material to the fraud issue are disputed by the parties. Therefore, summary judgment is improper at this time.

■ The Bank's second claim of fraud is that the documents presented by Offshore are fraudulent in that they claim a default for a breach which the parties agreed would not be a default. The court finds that such a claim does not fall within the fraud provisions of UCC Article 5. Regardless of the agreement between the customer and the beneficiary, the issuer of a credit is obligated to honor a draft which on its face complies with the terms of the credit. If the terms for default vary between the credit and underlying contract, the issuer and beneficiary are bound by the terms of the credit. Therefore, the issue is whether the documents presented by Offshore conform with the terms of the letter of credit.

The material portions of Letter of Credit No. 147 provide as follows:

We hereby open our Irrevocable Standby Credit in your favor, payable at our counters by presentation of your drafts ... to be accompanied by an invoice and a signed sworn statement of an officer of Offshore Trading Co., Inc. That [sic] drawing is due to the default of failure of Third World Capital Corporation to deliver product as required under the contract dated January 17, 1985....

....

You will notify us when either:

1. The product has been timely and satisfactorily delivered and this credit may be released, or

2. Third World Capital Corporation has failed to perform or is otherwise in default.

On February 15, Offshore presented the Bank with various documents, including the following: (1) a sight draft properly marked with an endorsement irrevocably assigning its proceeds to Tebtex Petroleum; (2) an invoice in the amount of $250,000; and (3) a sworn statement by Offshore's president that Third World "has failed to perform or is otherwise in default...."

■ In interpreting the terms of the credit, the court is bound by established rules.

Reasonable rather than unreasonable interpretations are favored by the law. Results which vitiate the contract are to be avoided. The contract as a whole is examined taking into account all the language in the instrument and construing it in harmony with other portions of the agreement.

*Seacat v. Mesa Petroleum Co.*, 561 F.Supp. 98, 105 (D.Kan.1983). Reading the letter of credit as a whole, the court finds no ambiguity in its terms. The letter clearly provided that the credit was payable when certain documents were presented, including a sworn statement that drawing was due to "the default *or* failure ... to deliver product." The plaintiff contends that this allowed Offshore to draw on the credit only

if Third World failed to deliver the oil. However, this provision was clarified in a subsequent paragraph requiring notice that Third World "has failed to perform or is otherwise in default." By the terms of the credit, default was not limited to the failure to deliver the oil.

Even if the court found the agreement to be ambiguous, the court would consider evidence as to facts and circumstances existing prior to and contemporaneous with the execution of the contract in order to clarify the intent and purpose of the contract. *Seacat*, 561 F.Supp. at 105. The only evidence provided by the Bank to indicate intent was a telex from Offshore to Third World dated January 18, 1985. This telex described the specific procedure that Offshore would use "to call a default under the delivery or lifting of the oil...." However, this telex did not discuss other types of default, nor does it clearly indicate that the letter could not be drawn on for other reasons. This telex alone does not give much weight to the Bank's argument. However, the parties have also provided the court with other documents which bear on the intent of the parties. In a telex dated January 17, 1985, and the final contract between Third World and Offshore on January 23, 1985, the parties clearly indicated that failure to deliver the oil would be a default under which Offshore could draw on the letter of credit. The very next sentence also indicated that "[d]efault on the part of (Seller) shall also include any breach arising from the non-performance of any agreed upon terms and conditions of the contract." This reflects the intent of parties to the underlying contract that *any* default by Third World would allow Offshore to draw on Letter of Credit No. 147. This supports the only reasonable interpretation of the letter of credit agreement: that the credit could be drawn on any default, including the failure of Third World to deliver. This is further clarified in the following paragraph that indicates that the beneficiary give notice to the Bank that Third World had either completed its obligations under the contract or had failed to perform or was otherwise in default. For these reasons, the court finds that summa-

ry judgment is proper on this claim and that as a matter of law, the documents Offshore presented to the Bank complied, on their face, with the terms of the letter of credit. Therefore, the Bank's dishonor, if based on these grounds, was wrongful.

SUMMARY.

The court's findings on these motions can be summarized as follows. There are genuine issues of material fact which preclude summary judgment on the issue of whether Offshore is a real party in interest in this action. Summary judgment is also improper on the issue whether the Bank gave Offshore sufficient notice under the UCP to allow it to raise all of its defenses. Furthermore, both parties' motions for summary judgment on the issue of fraudulent documents must be denied. However, the court finds that as a matter of law, the letter of credit was in full force and effect on February 15, 1985, and that dishonor could not be lawfully made because of Offshore's failure to provide a letter of credit to Third World. In addition, the court finds as a matter of law, that the documents supplied by the plaintiff complied fully with the terms of the letter of credit and that claiming default for a breach other than failure to deliver was proper under the credit.

IT IS THEREFORE ORDERED that the defendant Citizen's National Bank's motion for partial summary judgment as to Count I is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for partial summary judgment is granted only as to the claims that (1) the letter of credit was null and void, and (2) that the documents presented to the Bank complied with the terms of the letter of credit. Otherwise, the plaintiff's motion is denied.