THE BAZAAR, INC., Plaintiff-Appellee, v. EXCHANGE NATIONAL BANK OF CHICAGO, Defendant-Appellant (Nutmeg Mills, Inc., Defendant).

First District (4th Division)   No. 87—3233

Opinion filed March 31, 1988.

Martin W. Salzman and Laura A. Lipinski, both of Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago, for appellant.

Earl D. Yaffe, of Yaffe, Mark, Barliant & Ganellen, of Chicago (Kenneth G. Anspach, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, The Bazaar, Inc., contracted with Nutmeg Mills, Inc., a defendant, to purchase sweat shirts. Under the terms of the contract, Bazaar was required to pay for the merchandise by means of an irrevocable letter of credit. The letter was purchased by Bazaar from the defendant, Exchange National Bank, for the benefit of the seller, Nutmeg. The letter of credit was in the amount of $48,125 payable on 30 days' sight. The term 30 days' sight is of considerable importance in the issues as they finally evolve in this case. When presented to Exchange by Bazaar, the letter of credit was to be accompanied by a signed commercial invoice and a signed bill of lading.

The president of Bazaar colorfully testified that at about 10 a.m. on July 17, 1987, he had called Exchange and explained that the goods he received from Nutmeg were "total garbage" and that what was received might just as well have been "rocks." He asked that the letter of credit be stopped. Exchange told him that it could not do anything about it because the bank deals in documents only and not merchandise.

On that same day, the bank received a draft, an unsigned commercial invoice, and an unsigned bill of lading from Florida National Bank requesting that the draft be discounted at Nutmeg's expense and the funds be remitted.[1] A representative of the bank described a draft in

---

[1] Upon discovery of the fact that the invoice and the bill of lading were not signed, they were returned and properly signed on July 22, 1987. Bazaar alludes to this fact in its brief and states that the documents did not comply to the terms of the letter of credit. However, nothing transpired between July 17, 1987, and July 22, 1987, the date when the documents were properly signed. An injunction was not sought until August 11, 1987. We see no legal significance in the fact that the documents were not properly signed until July 22, 1987.

terms of a letter of credit as a demand for payment. When a draft has a term of 30 days' sight and it is drawn on the bank, if the bank puts its stamp on it, the bank accepts it and it becomes a financial instrument that can be used by the beneficiary for financing. It can be discounted upon request. At the request of the Florida National Bank, the draft was in fact discounted in the amount of $398.33, which was deducted from the face amount of the letter of credit and the balance was sent to the Florida National Bank on July 17 at 5:26 p.m.

On August 11, 1987, Bazaar sought to enjoin Exchange from paying Nutmeg's draft or any other draft drawn under the letter of credit. Further, Bazaar sought to enjoin Exchange from reimbursing itself from Bazaar for any sums paid under the letter of credit. The trial court issued a preliminary injunction enjoining Exchange from honoring the draft from Nutmeg and from obtaining reimbursement from Bazaar for any sums paid under the letter of credit. The trial court found that pursuant to the Uniform Commercial Code, section 5—114 (Ill. Rev. Stat. 1985, ch. 26, par. 5—114), it had jurisdiction to issue an injunction to enjoin the honor of a draft where there has been notification to the bank of fraud by its customer. The court reasoned that when Exchange discounted the draft on July 17, it became the holder and owner and took a market risk position because the bank had been put on notice of the facts that tended to show that there was fraud.

■■ ■ A letter of credit is issued by a bank at the request of a customer and provides that the bank will honor a draft that complies with the conditions specified in the letter of credit. (Ill. Rev. Stat. 1985, ch. 26, par. 5—103(1)(a).) It is independent of the underlying agreement between the customer and the beneficiary. (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.* (1976), 44 Ill. App. 3d 220, 231, 357 N.E.2d 1307, 1316; 7 R. Anderson, Uniform Commercial Code §5—114:9, at 327 (3d ed. 1985).) Section 5—114 of the Uniform Commercial Code explains the duties of an issuer.

> "Issuer's Duty and Privilege to Honor; Right to Reimbursement. (1) An issuer *must honor* a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 26, par. 5—114(1).)

Honor is explained in the Uniform Commercial Code at section 1—201(21) as:

> "To 'honor' is to pay or accept and pay, *or where a credit so*

*engages to purchase or discount a draft* complying with the terms of the credit." (Emphasis added.) (Ill. Rev Stat. 1985, ch. 26, par. 1—201(21).)

The time for honoring or rejecting a letter of credit is explained in the Uniform Commercial Code at section 5—112:

> "Time Allowed for Honor or Rejection; Withholding Honor or Rejection by Consent; 'Presenter.' (1) A bank to which a documentary draft or demand for payment is presented under a credit may without dishonor of the draft, demand or credit
>
> (a) defer honor until the close of the third banking day following receipt of the documents; and
>
> ***
>
> Failure to honor within the time here specified constitutes dishonor of the draft or demand and of the credit." (Ill. Rev. Stat. 1985, ch. 26, par. 5—112(1)(a).)

Consequently, Exchange had the duty to honor the letter of credit presented by the third banking day following the receipt of the corrected documents.

■ Bazaar argues that Exchange did not have to honor the letter of credit because it falls within the exception contained in section 5—114(2)(b) of the Uniform Commercial Code. The exception gives the bank an option to refuse honor. (7 R. Anderson, Uniform Commercial Code §5—114:13, at 331 (3d ed. 1985).) Section 5—114(2)(b) provides in pertinent part:

> "Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but *** there is fraud in the transaction
>
> ***
>
> (b) *** an issuer *acting in good faith may* honor the draft or demand for payment despite notification from the customer of fraud *** or other defect *** but a court of appropriate jurisdiction may enjoin such honor." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 26, par. 5—114(2)(b).)

Bazaar argues that payment was not due until 30 days after presentation and the injunction was issued prior to that time. Consequently, the court had the right to enjoin honor. Bazaar makes no contention that the bank did not act in good faith. Exchange responds that the letter of credit was honored on July 17, and while it may have had an option to honor or dishonor, it in fact did honor the document under the terms of section 1—201(21) by accepting the properly presented documents and purchasing at a discount, which is specifically provided for under section 1—201(21).

The letter was honored before the injunction was sought. The fact that a bank has notice of fraud does not prevent it from paying on drafts when it acts in good faith. (*Roman Ceramics Corp. v. Peoples National Bank* (M.D. Pa. 1981), 517 F. Supp. 526, *aff'd* (1983), 714 F.2d 1207.) The documents supported the payment of the letter. The bank's duty to honor arose on the day that the beneficiary presented the draft and the appropriate documents. Events subsequent to honor are irrelevant. *Offshore Trading Co. v. Citizens National Bank* (D. Kan. 1987), 650 F. Supp. 1487.

■ Bazaar had the right to seek an injunction before honor under section 5—114(2)(b) of the Uniform Commercial Code if in fact there was fraud, but not after. Bazaar, in effect, suggests that although the draft was honored, it could be dishonored because of the issuance of the injunction. That is not the import of the Code.

A bank that dishonors a draft because of an alleged fraud by its customer places itself in a position of peril. (*Romas Ceramics Corp. v. Peoples National Bank* (M.D. Pa. 1981), 517 F. Supp. 526, *aff'd* (1983), 714 F.2d 1207.) First, if in fact there was no fraud in the transaction, the bank would be liable under section 5—115 for damages for wrongful refusal to honor. (Ill. Rev. Stat. 1985, ch. 26, par. 5—115(1).) Secondly, it is at risk because it might lose credibility in commercial circles. See 7 R. Anderson, Uniform Commercial Code §5—114:14, at 332 (3d ed. 1985); *American Bell International, Inc. v. Islamic Republic of Iran* (S.D.N.Y. 1979), 474 F. Supp. 420.

In summary, the bank acted within its rights in honoring the draft. The circumstances presented in the injunction request came after the draft was honored. The preliminary injunction was improperly issued and is reversed.

Reversed.

JOHNSON and McMORROW, JJ., concur.