(953 P.2d 1047)

No. 76,858

PRAIRIE STATE BANK, *Appellee*, v. UNIVERSAL BONDING INSURANCE COMPANY, *Appellant*.

Opinion filed January 30, 1998.

Rod L. Richardson, Karl Kuckelman, and Todd Navrat, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for the appellant.

Joel W. Riggs, of McMaster & McMaster, of Wichita, for the appellee.

Before RULON, P.J., LEWIS and PIERRON, JJ.

LEWIS, J.: Prairie State Bank (Bank) instituted this declaratory judgment action against Universal Bonding Insurance Company (Universal Bonding). The Bank's purpose in filing this action was to obtain an order that the Bank was not required to honor a demand made by Universal Bonding on a letter of credit issued by the Bank. The trial court granted summary judgment in favor of the Bank, and Universal Bonding appeals.

Bauer Floor Covering, Inc., was a long-time customer of the Bank. By the order of Bauer Floor Covering, Inc., the Bank issued an irrevocable letter of credit in the amount of $50,000 on behalf of Bauer Floor Covering, Inc. The letter of credit was issued to Universal Bonding. The letter provided: "Funds under this Letter of Credit are available to you against your sight draft(s), signed by your authorized corporate officer, drawn on us bearing the clause 'Drawn under Credit #6743950'."

In addition to Bauer Floor Covering, Inc., there existed Dwight Bauer Floor Company. Neither company had any ties or relationship to the other. Dwight Bauer was the principal owner of Dwight Bauer Floor Company, and James D. Bauer was the principal owner of Bauer Floor Covering, Inc. The two Bauers are related, but the businesses are not.

In August 1994, Universal Bonding made demands on the letter of credit by presenting a sight draft to the Bank in the amount of $50,000. The sight draft stated that it was drawn under credit No. 6743950, and it was signed by a corporate officer. Approximately 1 week later, the Bank advised Universal Bonding that it would not honor the sight draft. The letter from the Bank advised Universal Bonding to "[p]lease be advised that same is being returned to you unpaid." In this action, Universal Bonding has counterclaimed and

is seeking damages on the premise that the Bank's dishonor of the sight draft was wrongful.

Universal Bonding had issued a bond for Bauer Floor Covering, Inc., to cover the work of that firm at the Denver International Airport. Any claims against Bauer Floor Covering, Inc., would be paid by Universal Bonding, which could be reimbursed through the letter of credit or could obtain funds to settle claims filed against Bauer Floor Covering, Inc.. The only parties to the letter of credit were the Bank, Bauer Floor Covering, Inc., and Universal Bonding.

Our standard of review in a case involving summary judgment is well known:

> "The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

The Bank contends that it had the right to dishonor the sight draft because Universal Bonding was seeking the funds for reasons not related to the Bank's customer and not related to the letter of credit. It is the position of Universal Bonding that the Bank simply had no choice but to honor its demand on the letter of credit. The Bank argues that Universal Bonding has paid no claims on behalf of Bauer Floor Covering, Inc., either at the time it submitted the draft or earlier. The Bank argues, and the evidence supports the proposition, that Universal Bonding made the demand on a sight draft to pay claims incurred by Dwight Bauer Floor Company, a corporation that was not a party to the agreement or letter of credit. As pointed out, it appears from the record that Universal Bonding's

attempted draw on the letter of credit had nothing to do with the Bank's customer at whose request the Bank issued the letter of credit. The Bank claims it had no obligation to honor a sight draft or claim against another party who was not the client of the Bank.

Universal Bonding appears to argue that the Bank was helpless to protect itself against an unfounded and fraudulent claim.

The Kansas Comment 1996 to K.S.A. 84-5-101 reads in part:

"There are essentially two types of letters of credit. The first is the 'commercial' letter of credit, facilitating the documentary sale of goods and protecting a third party against the customer's default in an underlying obligation. The buyer arranges for a bank to issue a letter of credit for the benefit of the seller. The buyer is the 'applicant,' the seller is the 'beneficiary,' and the bank is the 'issuer.' The letter is an undertaking by the bank to honor all drafts drawn upon it by the seller for the purchase price, so long as the drafts are accompanied by the documents required in the letter, such as an invoice, a bill of lading, or an inspection certificate. The risk of buyer insolvency is shifted to the bank as is the risk of the buyer trying to renege on the agreement. The seller gets the benefit of the bank's undertaking upon the seller's complying with the documentary requirements.

"The second is the 'standby' letter of credit. The standby letter guarantees that the bank will honor its customer's performance of obligations in a variety of situations. For example, instead of a performance bond from a surety, an owner of real estate may require the contractor to procure a letter of credit obligating its bank to pay the owner upon presentment of a certificate of default accompanied by a draft demanding payment."

The letter of credit involved in this action was a standby letter of credit. Universal Bonding was acting as the surety for Bauer Floor Covering, Inc., on the Denver International Airport job. In the event that Bauer Floor Covering, Inc., had defaulted or acted wrongfully on this job, any claims against it would be directed to Universal Bonding, which could then be reimbursed through the use of the letter of credit.

The letter of credit in this action specifically states that it is governed by the "Uniform Customs and Practice for Commercial Documentary Credits (1983 Revision) I.C.C. Publication No. 400" (UCP). The Official UCC Comment appended to K.S.A. 84-5-101 of the Uniform Commercial Code says: "The [UCP] is an international body of trade practice that is commonly adopted by international and domestic letters of credit and as such is the 'law of the transaction' by agreement of the parties."

As we view the record, Universal Bonding does not even argue that its demand on the letter of credit was based on claims paid on behalf of the Bank's customer, Bauer Floor Covering, Inc. The inference we obtain from the record is that the claim was made because of problems associated with the Dwight Bauer Floor Company, who is not a party to the letter of credit. Indeed, there is evidence that at one point, Universal Bonding discussed moving the letter of credit from Bauer Floor Covering, Inc., to Dwight Bauer Floor Company. This transfer did not take place. We have a situation in which the Bank, according to Universal Bonding, has virtually no way to avoid paying the $50,000, even though the claim did not arise from the company covered by the letter of credit. We reject the argument of Universal Bonding in this regard. To accept its argument would mean that it could openly defraud the Bank by drawing on the letter of credit anytime it pleased without regard to whether it has paid any claims or had paid claims on behalf of a party to the letter of credit.

Universal Bonding first argues that the dishonoring of the sight draft was wrongful because the Bank did not provide Universal Bonding with a reason as to why it was dishonoring the draft. UCP Article 16(d) provides:

"If the issuing bank decides to refuse the documents, [presented as the demand on the letter of credit] it must give notice to that effect without delay by telecommunication or, if that is not possible, by other expeditious means, . . . to the beneficiary . . . . *Such notice must state the discrepancies in respect of which the issuing bank refuses the documents* . . . ." (Emphasis added.)

The Bank, in refusing to honor the sight draft in question, did not state the deficiencies "in respect of which the issuing bank refuses the documents." Whether the Bank's refusal to honor the letter of credit as required by the UCP makes its dishonor unlawful is never discussed by the trial court. There is evidence that the Bank advised Universal Bonding by telephone that it would not pay the draft because it believed the draw was made based on claims against Dwight Bauer Floor Company, which was not a party to the letter of credit agreement. In the letter notifying Universal Bonding of its dishonor of the draft, however, the Bank gave

no reason to support its action. We cannot resolve an issue not visited by the trial court.

K.S.A. 84-5-103(1)(a) (Ensley) says that "the issuer will honor drafts or other demands for payment *upon compliance with the conditions specified in the credit.*" (Emphasis added.) Our review of the record indicates that Universal Bonding did comply with all of the conditions specified in the credit.

In defending its action, the Bank sought to introduce other documents to show the letter of credit was for a specific job, primarily the "Denver International Airport Concourse C Job." The problem with that evidence is that the letter of credit itself makes no mention of any other documentation required and says:

"This Letter of Credit sets forth in full the terms of our undertaking and such undertaking shall not in any way be modified, amended or amplified by reference to any documents or instrument referred to herein or in which this Letter of Credit is referred to or to which this Letter of Credit relates and any such reference shall not be deemed to incorporate herein by reference any document or instrument."

It appears to be a fact that Universal Bonding, in making its sight draft demand, complied with all the terms set forth in the letter of credit. The role which Dwight Bauer Floor Company played in the sight draft was not apparent from the letter of credit itself nor was it apparent from the demand made by Universal Bonding.

Letters of credit are generally subject to the principle of independence, which says that the letter of credit is a separate contractual obligation between the issuer and the beneficiary, not subject to terms of any contract between the beneficiary and the Bank's customer. This principle is based on the "strong policy that the letter of credit should be completely independent from the underlying contracts . . . . [U]pholding the independence principle as much as possible is necessary to protect the commercial utility of letters of credit. K.S.A. 84-5-114." *Offshore Trading Co. v. Citizens Nat. Bank*, 650 F. Supp. 1487, 1492 (D. Kan. 1987).

We have examined the letter of credit which is at issue and conclude it is not ambiguous, and we further conclude that Universal Bonding complied with its terms when it made the demand on the Bank.

Despite all of this, we agree with the trial court that the Bank was relieved from its obligation under the letter of credit by "fraud in the transaction." Under that theory, the Bank would not be bound by a claim which was fraudulent in nature but which complied on its face to the letter of credit. As we view it, the theory of fraud in the transaction is the only method by which a bank might protect itself from a false and fraudulent claim on a letter of credit and is an equitable defense which exists independently from UCP Article 16(d).

Universal Bonding argues that fraud in the transaction is not a defense under the UCP and, therefore, is unavailable to the Bank. We disagree. We have examined the UCP in this regard and, while it does not specifically disallow a defense of fraud in the transaction, it also does not specifically provide for it either. We consider the UCP to be silent on the subject, and in such cases the UCC would apply. *Offshore Trading Co.*, 650 F. Supp. at 1491.

At the time this case was decided, the UCC allowed dishonor of a draft on a letter of credit when fraud in the transaction occurred:

"(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. . . .

"(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but . . . there is fraud in the transaction:

. . . .

(b) . . . an issuer acting in good faith *may* honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the document but a court of appropriate jurisdiction may enjoin such honor." (Emphasis added.) K.S.A. 1995 Supp. 84-5-114.

The trial court noted, and we agree, that the statute provides the Bank *may* honor the draft despite the existence of fraud. It seems perfectly obvious that the legislature, by use of the word "may," also gave the Bank the option of "not" honoring a sight draft where there is fraud in the transaction. For that reason, we hold that under K.S.A. 1995 Supp. 84-5-114(2), a bank may dishonor a sight draft drawn on a letter of credit which appears to be valid on its face and is made in compliance with the terms of the letter of credit if it determines there was fraud in the transaction.

50 Am. Jur. 2d, Letters of Credit § 61 states in pertinent part:

"As a general rule, in commercial transactions, whether dishonor of a letter of credit by an issuing bank or an injunction barring the issuing bank from honoring the letter of credit will be justified depends on whether the fraud is of such a serious nature as to outweigh the public policy considerations in making an issuing bank's obligation to pay upon demand under the letter of credit independent of the underlying transaction between the customer who has obtained the letter of credit and the beneficiary. Some of the courts which have considered the issue have described the type of fraud which will justify dishonor of a letter of credit . . . as fraud so egregious as to vitiate the entire transaction."

Under our statute, fraud in the transaction "must stem from the conduct of the beneficiary against the customer, not by the customer against the issuer of the letter of credit." *InterFirst Bank Greenspoint v. First Fed'l Savings & Loan Ass'n*, 242 Kan. 181, 187, 747 P.2d 129 (1987).

"The purpose of a letter of credit is to allow the beneficiary to rely thereon, rather than solely upon the credit of the customer. The exception to the issuer's duty to honor letters of credit has been narrowly construed by the courts. [Citations omitted.] *Fraud in this connection is defined . . . as of 'such an egregious nature as to vitiate the entire transaction.'* " (Emphasis added.) 242 Kan. at 187.

See also *Offshore Trading Co.*, 650 F. Supp. at 1491-92 (egregious fraud necessary for issuing bank to dishonor draft on letter of credit).

The facts show that when Universal Bonding attempted to draw $50,000 from the Bank on the letter of credit, it had no right to do so. The draw by Universal Bonding had nothing to do with Bauer Floor Covering, Inc., which was the customer of the Bank and was a party to the letter of credit. Universal Bonding was attempting to obtain funds under false pretenses, which we consider to be fraudulent. Accordingly, we hold that when Universal Bonding attempted to draw $50,000 from the Bank on the letter of credit, it committed fraud in the transaction which justifies the Bank's refusal to honor the draft. There is nothing in the record to indicate that Universal Bonding had any right whatsoever to the funds under the letter of credit in question. Universal Bonding had paid no claims against the Bank's customer, Bauer Floor Covering, Inc., for whose benefit the letter had been in position. The Bank be-

lieves, and there is evidence in the record from which it can be inferred, that Universal Bonding's attempt to draw $50,000 from the Bank was related to Dwight Bauer Floor Company. That company had no connection to the letter of credit, and Universal Bonding had no right to draw from that line of credit for Dwight Bauer Floor Company.

We are not as kind as was the trial court in describing the actions of Universal Bonding. That company attempted to obtain $50,000 by, in effect, representing that the draft was based on a line of credit and was for the benefit of Bauer Floor Covering, Inc. The deceit of Universal Bonding in hiding the true facts from the Bank was fraud of " 'such an egregious nature as to vitiate the entire transaction.' " *InterFirst Bank Greenspoint*, 242 Kan. at 187.

We affirm the decision of the trial court. We hold the Bank had the right to dishonor the draft because of fraud in the transaction.

Affirmed.